United States District Court
Southern District of Texas
**ENTERED**
December 31, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSE VIDAL HERRERA NARANJO, | § § | CIVIL ACTION NUMBER 4:25-cv-05756 |
| Petitioner, | § § § | |
| versus | § § § | JUDGE CHARLES ESKRIDGE |
| BRYAN UHLS, *et al*, Respondents. | § § § | |

## OPINION AND ORDER ON DISMISSAL

Petitioner Jose Vidal Herrera Naranjo was born in Ecuador and entered the United States without lawful permission over two decades ago. Dkt 1 at ¶1. In 2017, he was placed in removal proceedings and later applied for cancellation of removal. Ibid. He was taken into custody by Immigration and Customs Enforcement when he appeared before an immigration court for hearing regarding those proceedings on August 5, 2025. Id at ¶2.

Petitioner is currently being held at the Joe Corley Processing Center in Conroe, Texas. Id at ¶3. Respondents are sued in their official capacity as officers or employees of the United States and are collectively referred to as *the Government*.

Pending is a petition for a writ of *habeas corpus*, by which Petitioner challenges his detention without a bond hearing. Dkt 1. He asserts that he's entitled to such hearing under 8 USC §1226(a), which provides for discretionary detention during removal proceedings. See id at ¶¶36–39. The Government responds that no bond hearing is required because Petitioner is an "applicant for admission" under 8 USC §1225(b)(2)(A), which provides for

mandatory detention during removal proceedings. Dkt 7 at 1–2.

This action presents the same issue of textual interpretation recently addressed and resolved by the undersigned in *Montoya Cabanas v Bondi*, 2025 WL 3171331 (SD Tex). Counsel for Petitioner was so advised and responded to the *Montoya Cabanas* decision, in addition to presenting other novel arguments not considered there. Dkt 8 (reply).

Upon due consideration of the additional textual argument raised by Petitioner, the undersigned maintains the ruling in *Montoya Cabanas*. The construction given 8 USC §§1225 and 1226 in that case thus controls here.

Petitioner's discussion of the Laken Riley Act warrants attention. See Dkt 8 at 4–5. He argues that the Act creates a "surplusage problem" under the Government's reading of §1225(b)(2), asserting that the correct inquiry is "whether Petitioner's or the Government's construction of section 1225(b)(2) 'fits most logically and comfortably into the body of previously *and subsequently enacted law*.'" Ibid, quoting *West Virginia University Hospital v Casey*, 499 US 83, 100 (1991). On that basis, he contends that the Government's interpretation renders the Laken Riley Act largely redundant. See id at 5.

To the contrary, canons of statutory construction (like the presumption against superfluity) apply only where the text is ambiguous. See *United States v Moore*, 71 F4th 392, 395 (5th Cir 2023): "If applicable, canons of construction can be used to resolve remaining ambiguity." Indeed, *Casey* itself explains, "Where a statutory term presented to us for the first time is *ambiguous*, we construe it to contain that permissible meaning which fits most logically and comfortably into the body of both previously and subsequently enacted law." 499 US at 100 (emphasis added). But where, as here, the statutory text is unambiguous, canons of construction don't support departure from that text.

Petitioner also contends that the manner of his arrest—outside of an immigration courtroom while appearing for hearing—violated his right to due process. Dkt 1 at ¶30–35. He maintains that other courts to consider the constitutionality of such "hallway arrests" have found due-process violations. See Dkt 8 at 7 (collecting cases).

This argument depends in part upon his assertion that he is erroneously detained under §1225(b)(2) without opportunity for a bond hearing. Dkt 1 at ¶¶30–35. To the contrary, it has been determined that §1225(b)(2)(A) lawfully applies here. Beyond that, the scope of judicial inquiry into immigration legislation is quite limited given the plenary power of Congress over such matters. See *Fiallo v Bell*, 430 US 787, 792 (1977): "This Court has repeatedly emphasized that 'over no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens." Congress hasn't provided for a bond hearing under §1225(b)(2), and Petitioner hasn't persuasively identified any basis for imposing additional procedural requirements not required by statute.

It does appear the Government has adopted a widespread practice of taking aliens into custody when they appear for court. Such practice has thus become a recurring fact pattern in many petitions of those seeking release on *habeas corpus*. But upon review, the cases cited by Petitioner don't hold that the location of arrest is *itself* a due-process violation, nor do they provide any persuasive justification as to why that should be a determinative factor in this context. For example, see *INS v Lopez-Mendoza*, 468 US 1032, 1036 (1984): "The mere fact of an illegal arrest has no bearing on a subsequent deportation proceeding." Absent a connection that undermines the lawfulness of Petitioner's detention pursuant to the immigration laws, argument that such practice has unintended consequences or is poor policy is simply beyond the jurisdiction afforded upon inquiry on *habeas corpus*.

Lastly, Petitioner contends that prior work authorizations that he received during the pendency of his

asylum proceedings "give[ ] rise to some meaningful liberty interest." Dkt 8 at 8. But employment authorizations don't convey legal status. See *Figueroa v Holden*, 455 F Appx 492, 493 (5th Cir 2011). Having found that the present detention by the Government is constitutional and authorized by statute, the fact that Petitioner was previously granted an employment authorization by the Government doesn't alter that conclusion.

* * *

In so concluding, respectful acknowledgement is given to the seven other district court judges in the Houston Division who have also recently reached the statutory issue presented in this case. Each has determined under similar circumstances in favor of §1226 over §1225. For example, see *Ortega-Aguirre v Noem*, 4:25-cv-04332 (SD Tex, Oct 10, 2025) (Bennett, J); *Hernandez Lucero v Noem*, 4:25-cv-03981 (SD Tex, Oct 23, 2025) (Ellison, J); *Aslamov v Bradford*, 4:25-cv-04299 (SD Tex, Oct 30, 2025) (Hanks, J); *Mejia Juarez v Bondi*, 4:25-cv-03937 (SD Tex, Oct 27, 2025) (Hoyt, J); *Buenrostro-Mendez v Bondi*, 2025 WL 2886346, (SD Tex) (Rosenthal, J); *Reyes-Lopez v Noem*, 4:25-cv-04629 (SD Tex, Nov 21, 2025) (Lake, J); *Espinoza Andres v Noem*, 4:25-cv-05128 (SD Tex, Dec 2, 2025) (Hittner, J). Another three judges in this Division haven't reached decision, but two have it currently pending before them. For example, see *Romero Moreno v Tate*, 4:25-cv-04903 (SD Tex) (Hanen, J); *Martinez-Sarres v Warden*, 4:25-cv-05273 (SD Tex) (Werlein, J).

That said, until the Fifth Circuit gives a definitive interpretation, it is simply up to each district court judge to give the text his or her own best reading. And in that regard, it's also noted that at least two cases from the Southern District of Texas are currently pending before the Fifth Circuit on this issue. See *Buenrostro-Mendez v Bondi*, 25-20496 (cited above, per Rosenthal, J); *Covarrubias v Vergara*, 25-40701 (per Kazen, J, SD Tex, Laredo Division). Three are also pending from the Western District of Louisiana. See *Kostak v Trump*, 25-30620; *Ventura*

*Martinez v Trump*, 25-30621; and *Lopez-Santos v Noem*, 25-30656.

* * *

The petition for a writ of habeas corpus is DENIED. Dkt 1.

This action is DISMISSED.

SO ORDERED.

Signed on December 31, 2025, at Houston, Texas.

_____
Honorable Charles Eskridge
United States District Judge